Charles E. **FOREMAN** and Mary T. Foreman, Plaintiffs,

v.

**GENERAL MOTORS CORPORATION, Defendant.**

No. C 3–84–984.

United States District Court, S.D. Ohio, W.D.

Aug. 13, 1985.

Roger J. Makley, John A. Cumming, Dayton, Ohio, for plaintiffs.

Robert G. Stachler, James E. Britain, Cincinnati, Ohio, Robert W. Culver, John J. Kish, General Motors Corp., Detroit, Mich., for defendant.

## DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION TO DISMISS

RICE, District Judge.

Plaintiff Charles Foreman is and has been the president and principal shareholder of Foreman Industries, Inc., as well as chairman of its Board of Directors. Fore-

man Industries entered into the first of a series of contracts with Defendant General Motors Corporation (GMC) in July, 1979. It filed for reorganization under Chapter 11 of the U.S. Bankruptcy Code on October 21, 1981. On February 11, 1983, Foreman Industries and the First National Bank of Dayton brought suit against General Motors Corporation and the City of Bowling Green in this Court (Case No. C–3–83–126). 34 B.R. 712. This Court entered an Order approving the settlement of Case No. C–3–83–126 on November 6, 1984.

Charles Foreman and his wife, Mary Foreman, filed the instant Complaint against Defendant General Motors Corporation in Montgomery County Common Pleas Court on November 1, 1984. Defendant removed the case to this Court on December 3, 1984. Defendant's Motion to Dismiss (Doc. # 3) now comes before the Court for resolution. The Court finding an oral hearing on said motion not to be necessary, Defendant's request for same is overruled.

■ (1) Scrutiny of Plaintiffs' First Cause of Action reveals a host of allegations concerning Defendant's breach of certain construction contracts entered into with Foreman Industries. Apart from references to certain communications made by Defendant to Plaintiff Charles Foreman, the latter acting on behalf of Foreman Industries, the Complaint does not raise any allegations of conduct by Defendant directed towards Plaintiff Charles Foreman, or Plaintiff Mary Foreman, as individuals. Plaintiffs nonetheless contend that, rather than attempting to re-litigate Foreman Industries' breach of contract suit, they are merely asserting personal tort claims against Defendant for tortious interference with prospective business advantage. The Court agrees with Defendant that such a characterization of the First Cause of Action is not sufficient to circumvent the rule which precludes individual shareholders from bringing actions for injuries inflicted upon the corporation in which they hold stock.

Under Ohio law, the tort of interference is cognizable when one party to a contract is induced to breach that contract as a result of the malicious conduct of a third person who is not a party to the contract. *Battista v. Lebanon Trotting Ass'n*, 538 F.2d 111, 116 (6th Cir.1976). Plainly this scenario does not match that set forth by Plaintiffs herein, non-parties to the GMC–Foreman Industries contract alleging malicious and deliberate acts on the part of a party to a contract, Defendant GMC. *Battista* also emphasized the reluctance of Ohio courts to permit an averment of malice to change a contractual action into a claim sounding in tort. Absent an independent legal duty, such as that owed by an insurer to an insured, under Ohio law a breach of contract does not create a tort claim, regardless of the nature of the breaching party. *Id.* at 117–18. No such independent legal duty is discernible herein.

Plaintiffs cite to the Court several California cases which purport to support their position that they may seek recovery in tort for damages arising from Defendant's deliberate misconduct, notwithstanding the fact that Foreman Industries has already pursued a cause of action for the same wrongs. Scrutiny of the cases cited, however, reveals facts in each which differed considerably from the facts of the cases herein. Notably, both cases involved false representations by defendants therein which were intended to induce the plaintiffs to *form* corporations for the purpose of consummating business undertakings with defendants. Each of the corporations so formed subsequently failed, due in large part to the falsity of the representations which had precipitated the formation of the corporations. *See Nathanson v. Murphy*, 132 Cal.App.2d 363, 282 P.2d 174 (1955); *Sutter v. General Petroleum Corporation*, 28 Cal.2d 525, 170 P.2d 898 (1946). Although the individual stockholders in those cases were permitted to maintain causes of action against the defendants separate from that of the corporation for the harm done, these cases present factual

and policy considerations not present in the instant case.

In the very recent decision of *Warren v. Manufacturers National Bank*, 759 F.2d 542 (6th Cir.1985), the Sixth Circuit reaffirmed the fundamental policy of corporate law that an individual shareholder may not maintain suit for damages incurred by a corporation. *Warren* involved a federal RICO action for alleged fraudulent representations made to Paragon Steel Corporation. The plaintiff was not Paragon Steel Corporation, but rather Harold Warren, its chief executive, board chairman and sole shareholder, who alleged that he had lost his total investment in Paragon as well as his job due to the alleged fraud of defendant. The Sixth Circuit affirmed the lower court's dismissal on the ground that any injury which Warren had incurred was actually an injury which had been sustained by the corporation. *Id.* at 544. Paragon Steel Corporation was deemed the only proper plaintiff in a suit involving defendant's representations. *Id.* at 545.

The Court does not find Plaintiffs' characterization of their First Cause of Action to be sufficient to circumvent the well-recognized bar precluding individual shareholders from suing to enforce violations of obligations owed to the corporation. In this case, in any event, Foreman Industries has already litigated its breach of contract claim against Defendant GMC. The Court does not find Plaintiff's First Cause of Action to state a claim upon which relief may be granted. Defendant's Motion to Dismiss, insofar as it relates to this First Cause of Action, is sustained.

██ (2) In the Second Cause of Action contained in Plaintiffs' Complaint, Plaintiff Charles Foreman charges Defendant with intentional infliction of emotional distress due to its deliberate failure to pay Foreman Industries certain sums of money which were due and owing. Plaintiff Mary Foreman claims emotional distress in the Third Cause of Action stemming from her concern as to the effects of Defendant's conduct upon her husband. Defendant's argument is that economic duress, unaccompa-

nied by threats of physical violence directed at the aggrieved individual, falls outside Ohio's definition of the tort of intentional infliction of emotional distress. The Court finds recent Ohio case law to undercut Defendant's position, and thus overrules that portion of Defendant's Motion to Dismiss applicable to Plaintiffs' Second and Third Causes of Action.

In *Yeager v. Local Union 20*, 6 Ohio St. 369, 453 N.E.2d 666 (1983), the Ohio Supreme Court found plaintiff therein to have stated a cause of action for intentional infliction of emotional distress as the result of defendants' threat to shut down plaintiff's business, their menacing remarks concerning plaintiff and his family, and their threat to "get" plaintiff. *Reamsnyder v. Jaskolski*, 10 Ohio St.3d 150, 462 N.E.2d 392 (1984), involved allegations against two individual defendants arising out of the settlement of an insurance claim for damages to an automobile owned by the plaintiff's wife. Although both defendants were alleged to have pressured plaintiff over the telephone to settle the damage claims and to return a rental car, the second of the two defendants was also alleged to have told plaintiff that he would "tear ... [plaintiff's] face off" if the rental car was not returned. The conduct of the second defendant, who had added the threat as to violence against the plaintiff, was found to state a sufficient claim for relief for intentional or reckless infliction of emotional distress. The conduct of the first defendant, who had merely pressured the plaintiff to settle the dispute, was held as a matter of law not to reach the level of "extreme and outrageous" conduct required in *Yeager*. 10 Ohio St.3d at 153, 462 N.E.2d at 395.

Defendant focuses upon the presence or absence of physical threats against the plaintiff as the common element in these two formulations of the parameters of the tort of intentional infliction of emotional distress. This theory, however, is belied by the recently published Ohio appellate decision in *Slusher v. Oeder*, 16 Ohio App.3d 432, 476 N.E.2d 714 (1984). In *Slusher*, plaintiff alleged that defendant had engaged in a persistent series of telephone calls to plaintiff's wife designed to entice or induce her to have sexual relations with defendant. The complaint alleged that defendant had succeeded in having sexual relations with plaintiff's wife and that the phone calls continued for another two years past the date of that tryst. The trial court apparently sustained defendant's position that the complaint failed to state a claim of relief for intentional infliction of emotional distress due to the lack of "direct or personal confrontation" between plaintiff and defendant. 16 Ohio St.3d at 435, 476 N.E.2d at 717. The appellate court in *Slusher*, however, reversed, finding the absence of such direct contact not to be a bar to the stating of a claim by plaintiff.

The *Slusher* court, reviewing Ohio law, interpreted *Reamsnyder* as extending the personal "face-to-face" confrontation present in *Yeager* situations where only telephone contact was established between the parties. The *Slusher* court did not, however, focus upon the distinction between the conduct of the two defendants in *Reamsnyder* for purposes of elaborating the scope of the tort of intentional infliction of emotional distress. Rather, the *Slusher* court reviewed the Second Restatement's requirements of "extreme and outrageous" conduct as well as Prosser's definition of the tort. Under Prosser's formulation liability for infliction of emotional distress extends to reckless conduct in which there is a high degree of probability that the mental distress will follow, and the defendant proceeds in conscious disregard of that probability. The *Slusher* court then concluded:

> Clearly, had Oeder directly and personally confronted Slusher and made his threats, demands and intentions known to Slusher, such would be a sufficient basis for bringing an action for the intentional infliction of emotional distress provided Slusher could prove the requisite degree of conduct on the part of Oeder and that the emotional distress suffered as a result of Oeder's actions was serious. However, even if Oeder purposely

avoided any direct and personal confrontation with Slusher, his actions of making continuous and repeated advances towards Mrs. Slusher indicate a conscious disregard on his part of the high degree of probability that mental distress could follow from his conduct.

16 Ohio App.3d at 435, 476 N.E.2d at 718. Finding the requisite high degree of probability of mental distress present in the facts before it, the *Slusher* court reinstated plaintiff's cause of action for intentional infliction of emotional distress, despite the absence of any threat of physical violence directed by defendant against plaintiff.

Given *Slusher*, the Court is unable to sustain Defendant's Motion to Dismiss as it pertains to the Second and Third Causes of Action stated by Plaintiffs.[1] Nothing in this opinion, however, precludes Defendant from filing a Motion for Summary Judgment at the conclusion of discovery. Such a motion, of course, would be directed to the issue of whether Defendant's conduct was in fact so extreme and outrageous as to constitute intentional infliction of emotional distress.

In summary, Defendant's Motion to Dismiss is sustained insofar as it pertains to Plaintiffs' First Cause of Action, and overruled insofar as it applies to Plaintiffs' Second and Third Causes of Action. These latter two surviving causes of action remain set for trial by jury during the week of December 9, 1985.

---

1. The Sixth Circuit has instructed that, "in the absence of more convincing evidence of what the state law is," a federal court should apply the law as declared by an intermediate state court. *Kveragas v. Scottish Inns, Inc.,* 733 F.2d 409, 412 n. 2 (6th Cir.1984), *Woodruff v. Tomlin,* 616 F.2d 924, 928–29 (6th Cir.1980). No such convincing evidence has been found. The Court also notes that another federal district court reached a decision in harmony with that in the instant case prior to the decision in *Slusher*. In overruling a motion to dismiss, or in the alternative, for summary judgment in *Yungkau v. Dean Witter Reynolds, Inc.,* 628 F.Supp. 23 (S.D.Ohio 1985), the Honorable S. Arthur Spiegel rejected the argument that the *Yeager* and *Reamsnyder* decisions require a threat of physical violence for a claim of intentional or reckless infliction of emotional distress to be actionable.